29 C.C.P.A.(Patents)

### In re STEINER.

**Patent Appeal No. 4552.**

Court of Customs and Patent Appeals.
March 23, 1942.

N. S. Amstutz, of Valparaiso, Ind., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting all of the claims of appellant's application for a patent upon the ground of unpatentability over the cited prior art.

The rejected claims are numbered 1 to 6, inclusive, and 8 and 9. No claims were allowed. Claim 1 is illustrative of the subject matter involved and reads as follows:

"1. In super highways, a plurality of automobile lanes constituting one group, a plurality of separate bus and truck lanes constituting a separate and parallel group, a continuous parking slow lane along both sides of each group, entrances from opposite directions to both groups which include a plurality of partially covered curving ramps of short radius leading upward from the same side of each group, a plurality of separate partially covered curving ramps of short radius leading upward from the other side of each group, the ramps being disposed to avoid all cross traffic and from a single underneath passageway from opposite directions be divided into four separate curving passages beneath the main groups, two of such passages leading onto the main groups in one direction and two of said passages leading on to the main group in an opposite direction."

The references cited are:

Hale, 1.173,505, February 29, 1916.
Woodward, (Br.), 248,979, March 18, 1926.
Skultin, 1,689,161, October 23, 1928.
Paulet (Fr.), 654,918, December 7, 1928.
Musgrave et al., 1,771,269, July 22, 1930.
Perriaux (Fr.), 700,823, January 2, 1931.
McDonald (Ger.), 548,907, April 23, 1932.
Carpenter, 1,917,634, July 11, 1933.
Scientific American, May 28, 1910, page 433.
The American City, March, 1928, pp. 91, 92.
Automobile Trade Journal, December 1, 1924, p. 331.

The quoted claim sufficiently describes appellant's alleged invention. The element particularly stressed by him as imparting patentability to the claims is the element that recites short turns under the highway on to ramps which lead up to the slow lanes of the highway.

The cited patents to Hale, Skultin, McDonald, Paulet and Perriaux disclose various arrangements in which highways cross at different elevations and ramps are provided by means of which cars can pass from either side of one highway to either side of the other highway.

The publications the American City and the Automobile Trade Journal show the division of highways into lanes for different kinds of traffic.

The publication Scientific American discloses the provision of conduits of various kinds beneath a road surface.

The patents to Musgrave et al. and Carpenter disclose conduits embedded in various materials for heating or cooling the surface thereof.

The patent to Woodward shows a surface crossing with underpasses that are on the same level at intersections.

With respect to the rejection of claims 1, 2, 3, 8 and 9, the examiner stated that whether a roadway be used for trucks or passenger vehicles, or whether the individual lanes be designated as slow or fast lanes, is entirely a matter of police regulation which does not affect the structure of the roadway. After stating the foregoing the examiner in his statement continued:

"* * * Applicant is, therefore, essentially claiming a roadway having entrance and exit ramps from a cross road that runs underneath the superhighway. This type of crossing however is well known as shown by either Skul*k*in [Skultin], Hale, Perriaux, MacDonald or Paulet. The clover leaf of the Hale patent is probably the best known. Whether the ramps be enclosed or open seems to be a matter of choice. By providing parallel roadways applicant is merely duplicating. However, it is common practice to separate various types of traffic into separate roadways as shown by either the Automobile Trade Journal citation or The American City citation. Ramp approaches from roadways on one level to roadways on an upper level are conventional in road building. The location and arrangement of the ramp seems to involve ordinary engineering skill and judgment and the use of a barrier between lanes is also old as shown by McDonald."

With respect to claims 4, 5, and 6 the examiner stated:

"Claim 4 is directed to a roadway having a plurality of utility corridors and passageways therebeneath. This feature is believed to be adequately anticipated by the Scientific American citation.

"Claim 5 specifies roadways and a tubular underpass. McDonald and Woodward show underpasses to be old. Each can be called a tubular underpass substantially anticipating the claim.

"Claim 6 specifies steam pipes embedded in the roadway and corridors therebeneath. It is old in the art to embed steam pipes in a surfacing plastic as shown by Carpenter or Musgrave. Carpenter in particular heats or refrigerates a floor. It would seem obvious to arrange corridors therebeneath."

The Board of Appeals in affirming the decision of the examiner stated:

"This application relates to so-called 'Super Highways,' and the feature primarily stressed by appellant is the use of short turns under the highway on to ramps which lead up to the slow lanes of the highway.

"As far as we can discover, this specific detail is not disclosed in any of the references but it is believed clear that patents should not be granted on improvements of this nature unless they can be regarded as something more than obvious expedients to highway engineers. We do not believe

that, where a road passes under an arterial highway and it is desirable to provide an entrance to the highway at that point, one skilled in the art would not readily think of running a ramp up to the highway with a short turn if space was not available to make the usual large outside curve approach. We also consider that any engineer, when exercising ordinary common sense, would cause the ramp to enter the highway on the slowest possible lane.

"While it is true that the short radius turn, which would result from constructing what we regard as an obvious entrance to the highway, would compel drivers to slow up to a relatively safe speed, we do not consider that patentability can be predicated upon this fact. Any sharp turn in a highway will produce this result and we are satisfied that it is not an unobvious one. We are of the view, therefore, that appellant's short-turn feature is not patentable over the art relied upon.

"We are also of the opinion that the other details set forth in various claims do not define patentable advances and we consider that these matters have been sufficiently discussed by the examiner."

The references cited clearly show all of the elements of appellant's structure except the provision for ramps under the highway with short turns therein, which ramps lead up to the slow lanes of the highway.

There being no invention in providing a multi-lane highway where the structure of each lane is the same, we are in agreement with the view of the Board of Appeals that if space was not available to make the usual large outside curve approach from the lower to the upper highway, any highway engineer would, in view of the structures shown by the references, without the exercise of the inventive faculty, readily think of running a ramp from one highway to the other with a short turn.

This being obvious, the fact that such short turns would slow up the speed of the vehicles passing over the ramps and would tend to prevent accidents cannot lend patentability to the claims. As stated by the Solicitor for the Patent Office in his brief, "Naturally, with the main highway as wide as that shown by appellant, it will be necessary for some of the ramps or the passages leading to them to pass under the main highway. No new or unexpected result is derived from this arrangement."

With respect to the special limitations of claims 4, 5 and 6, the reasons given by the examiner for their rejection, as hereinbefore quoted, are so clearly sound that they do not require discussion by us.

That appellant's comprehensive plan for super highways is novel and useful may be conceded; but, to entitle him to a patent giving to him a monopoly for 17 years upon the structure claimed by him, invention—not merely the skill of the highway engineer—must be involved. To grant patent monopolies for the exercise of ordinary skill of highway engineers in adapting the structures shown by the prior art is not permissible under the law and would not advance the art of highway construction, but would tend to retard it.

For the reasons herein stated, the decision appealed from is affirmed.

Affirmed.